IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

WAYNE MCMANUS and SHILO
MCMANUS,

                                    Plaintiffs,

              v.

THE ALEUTIAN REGION SCHOOL
DISTRICT, et al.,

                                    Defendants.

Case No. 3:20-cv-00099-TMB

**ORDER ON DEFENDANTS' MOTION
TO DISMISS COUNTS 4 & 5
(DKT. 31)**

## I.    INTRODUCTION

The matter comes before the Court on Defendant Aleutian Regional School District ("ARSD") and individually named Defendants' Motion to Dismiss Counts 4 and 5 of the First Amended Complaint under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and (6) for lack of jurisdiction and failure to state a claim.[1] *Pro se* Plaintiffs Wayne and Shilo McManus ("Plaintiffs" or the "McManuses")[2] filed an Opposition.[3] Defendants filed a Reply, and Plaintiffs filed several additional documents, including documents which the Court construes as a

---

[1] Dkts. 31 (Motion to Dismiss Count 1); 31-1 (Memorandum in Support).

[2] *Pro se* complaints and filings are held to less stringent standards than formal pleadings drafted by lawyers. *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642–43 (9th Cir. 2018). Nevertheless, Plaintiffs remain obligated conform filings to Local and Federal Civil Rules of Procedure. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants."), *overruled on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, 925 (9th Cir. 2012); *see also* Fed. R. Civ. P. 8; Fed. R. Civ. P. 11; and D. Alaska L. Civ. R. 1.1(a)(3).

[3] Dkt. 35 (Opposition).

1

surreplies.[4] The matter is fully briefed and ready for decision; the Parties did not request oral argument, and the Court finds the matter suitable for disposition without argument. For the reasons discussed below, the Motion to Dismiss Counts 4 and 5 is **GRANTED in part** and **DENIED in part**.

## II.     BACKGROUND

This action arises out of a dispute between Plaintiffs and their former employer, ARSD. The Court previously granted Plaintiffs leave to file an amended complaint, and the Court included in its Order the legal standards for some of Plaintiffs' claims.[5] On March 12, 2021, Plaintiffs filed an Amended Complaint against ARSD and Joseph B. Beckford, the ARSD Superintendent, Crystal Dushkin, Mark Snigaroff Sr., Kathleen McCune, Rebecca Dunton, Sally Swetzof, Mary Swetzof,[6] William J. Dushkin, and Luke Snigaroff, in their individual capacities (collectively, "Defendants").[7]

---

[4] Dkts. 42 (Reply); 38 ("Motion to Deny Motion to Dismiss Counts 4 & 5" construed as First Surreply); 45 ("Reply to Document 42" construed as Second Surreply); *see also* Dkt. 39 (Affidavit in Support of Plaintiffs' Opposition to Dismissal).

[5] Dkt. 19 (Order).

[6] Plaintiffs spell individual Defendants' names as "Sally Swetzoff" and "Mary Swetzoff." Dkt. 29 at 1, 3 12–13. However, in Defendants' Motions to Dismiss and Plaintiffs' attached letter signed by one of the individual Defendants, their names are spelled "Sally Swetzof" and "Mary Swetzof." *See* Dkts. 39-7 (Letter from Mary Swetzof); 30-1 at 8, 11–12 (Memorandum in Support of Motion to Dismiss Counts 4 & 5); 32-1 at 10–12, 15–17 (Memorandum in Support of Motion to Dismiss Counts 2 & 3). Accordingly, the Court will use this spelling of Defendants' last names.

[7] Dkt. 29 (Amended Complaint).

2

## A. Allegations in Count 4 of the Amended Complaint

In Count 4 of their Amended Complaint, Plaintiffs claim that certain Defendants defamed Plaintiffs and "are liable for the damages to the McManuses' reputations in the community."[8] Plaintiffs allege that ARSD and Defendants Joseph Beckford, Mark Snigaroff, Crystal Dushkin, Mrs. Bennett,[9] Kathleen McCune, and Rebecca Dunton "published false and defamatory statements to others that the McManuses were unprofessional, confrontational, and caused concerns for 'the safety and emotional well-being of their students.'"[10] Plaintiffs argue "[t]hese false accusations are sufficiently disqualifying as to constitute a backlisting."[11]

Plaintiffs further allege that during a public meeting in Adak, Alaska in April 2018, Defendant Joseph Beckford wrongly "denied that [Shilo] McManus was the supervisor of the custodians" and "indicated that problems were due [to] the McManuses creating a 'hostile environment.'"[12] Plaintiffs allege that Defendant Mary Swetzof "published false and defamatory remarks [about Plaintiffs] in a three page [L]etter to ARSD dated May 1[,] 2018[.]"[13] Plaintiffs allege that this May 1, 2018 [L]etter included statements that Plaintiffs "made 'inaccurate reports about systems and housing' . . . in reference to protected activities" and characterized the McManuses as "'not responsible, reliable, or truthful adults[.]'"[14] Plaintiffs allege that during a

---

[8] *Id.* at 14 & ¶ 66.

[9] "Mrs. Bennett" is not named as a Defendant in Plaintiffs' Amended Complaint. *See id.* at 1–3.

[10] *Id.* at ¶ 62 (no citation included).

[11] *Id.*

[12] *Id.* at ¶ 63.

[13] *Id.* at ¶ 64.

[14] *Id.*

3

January 13, 2021 School Board meeting, Defendant Mary Swetzof "repeated the false claims made in her [May 1, 2018 L]etter . . . that the McManuses were supposed to clean the school and did not."[15]

Plaintiffs also incorporate by reference their allegations that ARSD retaliated against Plaintiffs for reporting mismanagement and personal issues at the school, as did Defendants Joseph Beckford, Crystal Dushkin, and Mary Swetzof, who "collaborated to fabricate a story about the McManuses[.]"[16] Plaintiffs describe ARSD's retaliation as taking various forms, including evicting Plaintiffs from their home and "blacklist[ing] [Plaintiffs] with a letter" which stated false reasons for their non-retention.[17] Additionally, Plaintiffs allege that ARSD violated Plaintiffs' right to free speech by limiting their time during public comments and "initially refusing to allow [Shilo] McManus to speak at all," and "omitting [Plaintiffs'] comment from board minutes."[18] Plaintiffs argue ARSD, "through its board and Superintendent Beckford and Hanley have a pattern[,] practice and policy of discriminating against women" as evidenced by Defendant Joseph Beckford's refusal to meet with Shilo McManus regarding misconduct by her subordinate, meeting with her male subordinate and male community members.[19]

Plaintiffs seek injunctive relief, damages, including "punitive damages in the amount of $1,000,000.00, or other such amount as determined at trial," and attorney fees and costs.[20]

---

[15] *Id.* at ¶ 65.

[16] *Id.* at ¶¶ 25, 27.

[17] *Id.* at ¶ 26.

[18] *Id.* at ¶ 44.

[19] *Id.* at ¶ 45.

[20] *Id.* at 29 & ¶ 58.

4

### B. Allegations in Count 5 of the Amended Complaint

In Count 5 of their Amended Complaint, Plaintiffs claim that certain Defendants violated Plaintiffs' rights under the Alaska Landlord Tenant Act.[21] Plaintiffs allege they entered into a month-to-month rental agreement with ARSD but do not specify when.[22] Plaintiffs allege ARSD failed to maintain a "fit premises as required by [Alaska Stat. Ann. §] 34.03.160" and, as a result, Wayne McManus "became sick in December from conditions in [the] rental unit," and his symptoms persisted until he moved out.[23] Plaintiffs allege that Wayne McManus "was forced to live [in] an alternate [housing] unit away from his family, and then to sleep on the floor of the school when the alternate unit was rented out."[24] Plaintiffs' children were unable to join Wayne McManus "in the alternate unit because fumes from a leaking furnace" made Shilo McManus ill.[25]

Plaintiffs allege that when they complained about the substandard living conditions, ARSD retaliated against them.[26] Plaintiffs allege that on April 27, 2018, ARSD, through Defendant Joseph Beckford, provided Plaintiffs with notice that ARSD and Defendant Joseph Beckford were evicting Plaintiffs from their residence, effective May 2, 2018.[27] Plaintiffs allege their lease with ARSD was through the end of May 2018.[28] Further, Defendant Joseph Beckford threated "to

---

[21] *Id.* at 15 (citing Alaska Stat. Ann. § 34.03.100).

[22] *Id.* at ¶ 67.

[23] *Id.* at ¶ 68.

[24] *Id.*

[25] *Id.*

[26] *Id.* at ¶ 69.

[27] *Id.* at ¶ 70.

[28] *Id.*

withhold approximately $3000.00 in airfare" that ARSD was mandated to provide Plaintiffs under their employment contract and Alaska Stat. Ann. § 23.10.380.[29] Plaintiffs also state that the "Alaska Department of Labor did not consider ARSD's stated cause [for eviction] 'good and sufficient' as required by statute."[30] Plaintiffs argue they are entitled to damages "for the unlawful eviction, stress, suffering, and emotional stress" due to ARSD's "negligent maintenance of [its] housing units."[31]

### C. Defendants' Motion to Dismiss Counts 4 and 5

ARSD moves, on behalf of all Defendants, to dismiss Counts 4 and 5 of the Amended Complaint under Rule 12(b)(1) for lack of jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[32] Defendants argue first that the Court should dismiss Counts 4 and 5 because these Counts are state law claims over which the federal Court lacks jurisdiction.[33] Next, Defendants argue, Count 4 should be dismissed for failure to state a defamation claim upon which relief can be granted.[34] Defendants argue that even accepting Plaintiffs' allegations as true, Plaintiffs' Amended Complaint does not state a valid claim for relief against Defendants Joseph Beckford, Mark Snigaroff, Crystal Dushkin, Katherine McCune, and Rebecca Dunton.[35] Defendants argue that "Plaintiffs have not alleged facts that would plausibly

---

[29] *Id.*

[30] *Id.*

[31] *Id.* at ¶ 71.

[32] Dkt. 31 at 1.

[33] Dkt. 31-1 at 3–4, 12, 14.

[34] *Id.* at 3–4.

[35] *Id.* at 4–5.

lead to the conclusion that any unprivileged and false statement of fact was published, much less the existence of *per se* actionability or special harm."[36] Defendants argue Plaintiffs may not "rely solely on generalized statements and recapitulations of the elements" of a defamation claim.[37]

As to Count 5, Defendants argue that Plaintiffs have not alleged that individual Defendants were acting as Plaintiffs' landlords or owed Plaintiffs any duties under Alaska's Landlord Tenant Act.[38] Insofar as Plaintiffs attempt to assert claims under Alaska Stat. Ann. § 34.03.100 or Alaska Stat. Ann. § 34.03.160 against any individual Defendant, such claims should be dismissed for failure to state a claim upon which relief can be granted.[39] Further, Plaintiffs' allegations center on Defendants' purported failure to maintain fit premises in the residential accommodations provided to Plaintiffs.[40] Defendants argue none of these allegations "bear any relationship to the other allegations or factual circumstances described elsewhere in the first Amended Complaint or to any federal claim[.]"[41]

### D. *Plaintiffs' Opposition and Surreplies*

Plaintiffs filed an Opposition in which they argue the Court retains supplemental jurisdiction to hear their state law claims even if the Court dismisses their federal law claims.[42]

---

[36] *Id.* at 5.

[37] *Id.* at 7.

[38] *See id.* at 13.

[39] *See* Dkt. 31-1 at 13.

[40] *Id.* at 14–15.

[41] *Id.* at 15.

[42] Dkt. 35 at 1–2.

Plaintiffs argue that Counts 4 and 5 clearly "stem from the federal retaliation claims, as themselves being acts of retaliation against protected activities and constitutional rights."[43]

In response to Defendants' Motion to Dismiss Count 4, Plaintiffs point to several incidents to support their defamation claim against Defendants: (1) ARSD issued letters of non-retention to Plaintiffs; (2) Defendant Joseph Beckford made statements that Shilo McManus was not delegated authority to supervise custodial or maintenance work; and (3) Defendant Mary Swetzof made false claims that Plaintiffs failed to follow a reading program "'after the first quarter,'" that Plaintiffs "'made continuous complaints about the first janitor, and made a hostile work environment for the second [janitor],'" that Plaintiffs disregarded "'their duty to upkeep the school,'" that Plaintiffs made "'false reports, or irrational attempts to further [a] hidden agenda,'" and that Plaintiffs " 'are not responsible, reliable, or truthful adults.'"[44]

Plaintiffs argue that the First Amendment "does not bar actions against defamatory statements of fact," and that their allegations in Court 4 include "specific instances where individual [D]efendants spoke publicly and wrote letters that were false and defamatory" against Plaintiffs.[45] These instances include claiming that Shilo McManus lacked "supervisory authority . . . over the custodians" and that "a custodian and his family [left Atka] because of . . . [P]laintiffs[.]"[46]

---

[43] *Id.* at 2, 6.

[44] *Id.* at 3–6 (emphasis omitted).

[45] *Id.* at 3, 5.

[46] *Id.* Plaintiffs state that in a "November 2017 memo" to Shilo McManus, Defendant Joseph Beckford allegedly stated that Shilo McManus, as "Head Teacher" was the ARSD "person on sight [sic] at Atka for oversight and responsibility for all programs, maintenance and custodial as well as instructional.'" *Id.* at 5.

8

Plaintiffs also point to non-retention letters sent by ARSD to Plaintiffs on April 15, 2018, as further support for their defamation claim.[47] Plaintiffs allege the non-retention letters stated in part that parents "did not feel that they could send students to school because they had serious concerns about the safety and well being of their children with you as a teacher."[48] Plaintiffs argue this sentiment is contradicted by Defendant Joseph Beckford's December 5, 2018 interview with the U.S. Department of Education's Office for Civil Rights ("OCR") in which he stated, "'There wasn't much of a problem with [Plaintiffs] not getting along with the students[.]'"[49] Plaintiffs also argue the letters of non-retention, which "contained allegations known to be false," are tantamount to blacklisting Plaintiffs from future teaching employment.[50] Plaintiffs point to the Anchorage School District's response to Wayne McManus's application for employment in which it stated Wayne McManus would not be interviewed "based on the letters of non[-]retention" and Wayne McManus's "response" to his non-retention letter.[51] Plaintiffs also argue the letters of non-retention are not privileged.[52]

As to Count 5, Plaintiffs reiterate that their claim about "unlawful eviction" and "unlawful revocation of lease rights" is subject to constitutional protections, is directly tied to their retaliation claim, and is properly before this Court.[53] Plaintiffs reallege that Wayne McManus was forced to

---

[47] *Id.* at 4.

[48] *Id.* (internal quotation marks omitted).

[49] *Id.*

[50] *Id.* at 3.

[51] *Id.* at 3–4 (internal quotation marks omitted).

[52] *Id.* at 4.

[53] *See id.* at 2.

9

move out of the school where he was residing and back into the house where he experienced "significant respiratory problems[.]"[54]Additionally, Plaintiffs allege that their lease was "unlawfully revoked," they were given "just a few days to pack" and move their belongings out of a remote village, and were "denied access to the vehicle to move belongings to the post office[.]"[55]

Plaintiffs also filed a "Motion to Deny Motion to Dismiss Counts 4 and 5 of the First Amended Complaint," which the Court construes as the First Surreply.[56] Plaintiffs state their Amended Complaint "is sufficient and states a claim upon which relief can be granted."[57] Additionally, Plaintiffs filed a "Reply to Document 42," which the Court construes as a Second Surreply.[58] In their Second Surreply, Plaintiffs argue that Counts 4 and 5 "stem from the 'same set of operative facts' as the federal claims in [C]ounts 1 and 2."[59] Plaintiffs argue that their unlawful eviction "is a retaliatory act [by Defendants] because of the federally protected actions [Plaintiffs]

---

[54] *Id.*

[55] *Id.*

[56] Dkt. 38. The Court notes that although Plaintiffs filed a response, motion, and an affidavit, in addition to their Opposition to the Motion to Dismiss, which the Court construes in part as surreplies, the Federal and Local Rules do not automatically provide for such filings. *See* D. Alaska L.R. 7.1(c) Replies ("Reply memoranda are optional and restricted to rebuttal of factual and legal arguments raised in the opposition."). Generally, parties intending to file a surreply must seek leave of the Court. *See, e.g.*, *Roland v. Hickman*, No. 2:15–cv–1133–JCM–VCF, 2015 WL 10735658, at *2–3 (D. Nev. Aug. 12, 2015) ("Before filing a sur-reply, a party must seek leave of court and show that a [surreply] is necessary to address new matters raised in a reply to which a party would otherwise be unable to respond. . . . The decision to allow a sur-reply is committed to the court's discretion."); *Daniels v. ComUnity Lending, Inc.*, No. 13cv488–WQH–JMA, 2015 WL 2338713, at *4–5 (S.D. Cal. May 12, 2015) ("Other district courts within the Ninth Circuit have found that a party must seek leave of the court to file a surreply[.]"). Plaintiffs are cautioned that such filings in the future will be rejected by the Court and struck from the docket.

[57] Dkt. 38 at 1.

[58] Dkt. 45.

[59] *Id.* at 1.

took, and so is the defamation. . . . intended to chill [P]laintiffs and others from engaging in protected activities."[60] Plaintiffs also suggest that if the Court concludes that Plaintiffs' claims are deficient, they should be permitted to amend their Complaint a second time.[61]

Finally, as previously described by the Court at Docket 46, Plaintiffs filed an Affidavit with attachments that seemingly pertains to all three Motions to Dismiss.[62]

### E. Defendants' Reply

Defendants replied to Plaintiffs' Opposition, reiterating that Counts 4 and 5 should be dismissed for lack of jurisdiction and for failure to state a claim upon which relief can be granted.[63]

As to Count 4, Defendants argue that "[r]egardless of whether Plaintiffs perceive that there is a common set of facts relevant to both retaliation claims and defamation claims," their defamation claims must be dismissed because the Amended Complaint does not contain factual allegations which, if accepted as true, state a valid basis for relief.[64] Defendants argue Plaintiffs

---

[60] *Id.* at 1–2.

[61] *Id.* at 2.

[62] *See* Dkt. 46 (Order Denying Motion to Dismiss Count 1). Plaintiffs filed an "Affidavit in Support of Documents Supporting Plaintiffs['] Memoranda Opposing Dismissal of the First Amended Complaint." Dkt. 39. Plaintiffs attach various documents, including a partial transcript from a December 5, 2018 interview between Defendant Joseph Beckford and personnel from the OCR; an excerpt from an ARSD handbook; a picture of a piece of paper on Defendant Crystal Dushkin's classroom table; the first page of a letter from OCR personnel to Defendant Joseph Beckford about an investigation involving the McManuses and alleged retaliation by ARSD; a letter from an ARSD School Board member "regarding what took place at the April 12[, 2018] public meeting with Defendant Beckford and townspeople in Adak"; an August 5, 2017 excerpted Facebook message from a former teacher, Sonja Mills; and a May 1, 2018 letter from Defendant Mary Swetzof to ARSD Superintendent and School Board members "detail[ing] her dissatisfaction" with Plaintiffs. *Id.* at 1–3; Dkts. 39-1; 39-2; 39-3; 39-4; 39-5; 39-6; 39-7 (Exhibits).

[63] Dkt. 42 (Reply).

[64] *Id.* at 4.

may not simply "allege that there was a retaliatory conspiracy in which each defendant played some amorphous and unspecified part."[65] Rather, to state a claim of defamation against each individual Defendant, Plaintiffs must include facts which correspond to the elements of defamation, and they have failed to do so here.[66]

As to Count 5, Defendants reiterate that the Landlord Tenant Act, as adopted in Alaska, "does not grant the tenant any right to be free from the landlord's negligence or provide any remedy to recover consequential damages for personal injuries resulting from such negligence if fitness and habitability are not in issue."[67] Despite Plaintiffs' argument that "their Count 5 claims 'stem from the federal retaliation claim' . . . the habitability of the District-owned housing which the McManuses occupied is a wholly separate issue from their asserted entitlement" to renewal of Plaintiffs' employment contracts.[68] Defendants urge the Court to dismiss Plaintiffs' landlord tenant claims "because the habitability of lodging provided by the District does not stem from the same set of operative facts as the federal law claims that Plaintiffs seek to bring before the court in Counts 1 and 2[.]"[69]

## III.   LEGAL STANDARD

### A.  *Federal Rule of Civil Procedure 12(b)(1)*

Defendants move under Rule 12(b)(1) to dismiss Counts 4 and 5 of Plaintiffs' Amended Complaint for lack of jurisdiction. "The party asserting jurisdiction bears of the burden of

---

[65] *Id.*

[66] *Id.*

[67] *Id.* at 2.

[68] *Id.*

[69] *Id.* at 3.

establishing subject matter jurisdiction" and "[d]ismissal for lack of jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction."[70] Federal courts have supplemental jurisdiction to adjudicate state-law claims only if those claims are so related to claims over which the court has original jurisdiction "that they form part of the same case or controversy[.]"[71] In other words, a plaintiff's state law claims and federal law claims must "derive from a common nucleus of operative fact."[72]

### B. Federal Rule of Civil Procedure 12(b)(6)

Defendants also move under Rule 12(b)(6) to dismiss Counts 4 and 5 of Plaintiffs' Amended Complaint for failure to state facts sufficient to support a claim for relief. In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief,"[73] and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[74] In ruling on a 12(b)(6) motion, the Court must "'accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party.'"[75]

---

[70] *Bishop Paiute Tribe v. Inyo Cnty*, 863 F.3d 1144, 1151 (9th Cir. 2017) (citation and internal quotation marks omitted).

[71] 28 U.S.C. § 1367(a).

[72] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966*); see City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156 at 165–66 (1997); *Gravenstein v. Campion*, 540 F. Supp. 7, 9–10 (D. Alaska 1981).

[73] Fed. R. Civ. P. 8(a)(2).

[74] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[75] *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923 (9th Cir. 2001) (quoting *Nat'l Ass'n for the Advance. of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000)).

In determining whether a complaint pleads sufficient facts to cross "the line between possibility and plausibility," "[t]hreadbare recitals of the elements of a cause of action" and "conclusory statements" do not suffice.[76] However, a plaintiff need not plead "all facts necessary to carry" his or her burden.[77] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[78] So long as a plaintiff meets this standard of plausibility, his claim survives a 12(b)(6) motion even if the defendant present a similarly plausible description of the disputed events.[79] "'A dismissal for failure to state a claim is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[80]

"Generally, the court should not consider materials outside of the pleadings when ruling on a motion to dismiss for failure to state a claim."[81] However, courts may consider additional materials where the complaint "necessarily relies" on those documents and the documents' authenticity is not disputed.[82]

---

[76] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

[77] *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), *rev'd on other grounds*, 563 U.S. 713 (2011).

[78] *Iqbal*, 556 U.S. at 679 (citation omitted).

[79] *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011).

[80] *Arpin*, 261 F.3d at 923 (citation omitted).

[81] *Labs. Int'l Union of N. Am., Local 341 v. Main Bldg. Maint., Inc.*, 435 F. Supp. 3d 995, 1000 (D. Alaska 2020) (citing *Arpin*, 261 F.3d at 925).

[82] *Id.*; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (citation omitted); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[A] court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting

14

## C. Federal Rule of Civil Procedure 8

Under Rule 8, a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct."[83] A plaintiff must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[84] Rule 8 requires that a complaint clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss."[85]

## IV.   ANALYSIS

Defendants move, pursuant to Rule 12(b)(1) and (6), to dismiss Counts 4 and 5 of Plaintiffs' Amended Complaint for lack of jurisdiction and failure to state a claim. After consideration of the Parties' filings, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion.

### A. Count 4: Defamation

Under Alaska law, a plaintiff must establish the following elements to prevail on a defamation claim: "(1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) the existence of either 'per se' actionability or special harm."[86]

---

the motion to dismiss into a motion for summary judgment.") (citations and internal quotation marks omitted).

[83] Fed. R. Civ. P. 8(a), (d).

[84] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citation omitted).

[85] *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008).

[86] *French v. Jadon, Inc.*, 911 P.2d 20, 32 (Alaska 1996); *Burton v. Fountainhead Dev., Inc.*, 393 P.3d 387, 398 (Alaska 2017); *Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 130 (Alaska 2000) ("For a statement to be libel per se, the words used must be so unambiguous as to be reasonably

Whether a statement is defamatory is a question of law.[87] "A communication is defamatory if it tends to harm the reputation of another so as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]."[88] However, statements that are expressions of an idea or opinion rather than a statement of actual, known facts are generally protected.[89]

In determining whether a statement is an opinion, Alaska courts apply the factors set out in *Sands v. Living Word Fellow.*, and consider: (1) "the type of language used"; (2) "the statement's meaning in context"; (3) "whether the statement is verifiable"; and (4) "the broader social circumstances in which the statement was made."[90] "If the context demonstrates to the audience

---

susceptible of only one interpretation—that is, one which has a natural tendency to injure another's reputation." (internal quotation marks and citation omitted)); *see also Greene v. Tinker*, 332 P.3d 21, 39 n.72 (Alaska 2014). ("A statement is defamatory per se if the words used are so unambiguous as to be reasonably susceptible of only one interpretation—that is, one which has a natural tendency to injure another's reputation. But if the language used is capable of two interpretations, one of which would be defamatory and the other not, then it is for the jury to determine which meaning would be given the words by those who read them. If the latter alternative is applicable, the statement is defamatory per quod." (citation, internal quotation marks, and alterations omitted)); *see id.* ("'[S]pecial harm' [is] 'the loss of something having economic or pecuniary value.'" (quoting Restatement (Second) of Torts § 575)).

[87] *Alaskasland.com, LLC v. Cross*, 357 P.3d 805, 820 (Alaska 2015) (citing *Denardo v. Bax*, 147 P.3d 672, 677 (Alaska 2006)).

[88] *Green v. N. Pub. Co., Inc.*, 655 P.2d 736, 739 (Alaska 1982), *cert. denied*, 463 U.S. 1208 (1983); *MacDonald v. Riggs*, 166 P.3d 12, 16 (Alaska 2007) (noting that "[a]ccusing someone of holding a woman at gunpoint in the aftermath of a vicious attack would qualify as defamatory").

[89] *See Sands v. Living Word Fellow.*, 34 P.3d 955, 958 (Alaska 2001) (citations omitted); *see Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427, 440–41 (Alaska 2004) (A statement is not defamatory when the speaker is expressing a subjective view, interpretation, theory or conjecture rather than claiming to be in possession of objectively verifiable facts.).

[90] *Alaskasland.com, LLC*, 357 P.3d at 821–22 (internal quotation marks omitted) (citing *Sands*, 34 P.3d at 960); *State v. Carpenter*, 171 P.3d 41, 51 (Alaska 2007).

16

that the speaker is not purporting to state or imply actual, known facts, the speech cannot be the basis for a defamation claim."[91]

Truth and privilege are both defenses to a defamation claim.[92] There are two types of privileged communication recognized in Alaska: absolute and conditional.[93] Generally, "judicial officers, attorneys, witnesses, jurors, legislators, government executive officers and others are accorded absolute privilege of publishing false and defamatory matter within certain limitations" as a matter of public interest.[94] Conditional privilege is afforded to others when circumstances "'induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the publisher, and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.'"[95] Conditional privilege applies to statements reasonably necessary for the protection of one's own interests, the interests of third persons, or the interests of the public.[96] A defamation claim involving speech about a matter of public interest

---

[91] *Sands*, 34 P.3d at 960.

[92] *See Suulutaaq, Inc. v. Williams*, 782 F. Supp. 2d 795, 806–07 (D. Alaska 2010); *Wayson v. McGrady*, No. 3:18-cv-00163-SLG, 2019 WL 3852492, at *3–4 (D. Alaska June 25, 2019).

[93] *Fairbanks Publ'g Co. v. Francisco*, 390 P.2d 784, 793 (Alaska 1964).

[94] *Id.*

[95] *DeNardo v. Bax*, 147 P.3d 672, 679 (Alaska 2006) (quoting Restatement (Second) of Torts, § 594 (1977)).

[96] *Fairbanks Publ'g Co*, 390 P.2d at 793 (citing Restatement (First) of Torts §§ 585–91 (1938)); *Greene*, 332 P.3d at 35–36.

requires a plaintiff to show that false and defamatory statements made by publishers or government speakers were made with actual malice.[97]

1. The Court has Jurisdiction Over Plaintiffs' Defamation Claim

Here, the Court previously concluded Plaintiffs plausibly state a claim against certain Defendants for retaliation in violation of Section 504 of the Rehabilitation Act ("Section 504").[98] In their Amended Complaint, Plaintiffs allege that the retaliation they suffered as a result of advocating for a student with disabilities, among other things, includes retaliation that forms the basis of their defamation claim.[99] Specifically, Plaintiffs allege that certain Defendants blacklisted Plaintiffs with letters of non-retention and fabricated stories about Plaintiffs' bad behavior.[100] The allegations underlying both Plaintiffs' Section 504 retaliation claim and their defamation claim share a common nucleus of operative fact. Accordingly, insofar as Defendants' move to dismiss Count 4 under Rule 12(b)(1) for lack of jurisdiction, Defendants' Motion is **DENIED**.

2. Plaintiffs' Allegations Fail to Plausibly State a Claim for Defamation

The incidents alleged by Plaintiffs fail to plausibly state a claim for defamation against Defendants ARSD and individual Defendants Joseph Beckford, Mark Snigaroff, Crystal Dushkin,

---

[97] *Olivit v. City & Bor. of Juneau,* 171 P.3d 1137, 1143 (Alaska 2007) (citing *Pearson v. Fairbanks Publ'g Co.*, 413 P.2d 711, 714 (Alaska 1966); *Wayson v. McGrady*, No. 3:18-cv-00163-SLG, 2019 WL 3852492, at *3–4 (D. Alaska June 25, 2019) ; *MacDonald*, 166 P.3d at 16 n.8 ("Abuse of a conditional privilege occurs when a defendant publishes information that she 'knows to be false' or 'acts in reckless disregard as to its truth or falsity.'" (quoting Restatement (Second) of Torts § 600)).

[98] Dkt. 46.

[99] *See* Dkt. 29 at ¶¶ 26–27, 62–64.

[100] *See id.*

18

Kathleen McCune, Rebecca Dunton, Mary Swetzof.[101] The Court examines each of Plaintiffs' factual allegations in support of their defamation claim in turn.

First, Plaintiffs allege that ARSD and individual Defendants Joseph Beckford, Mark Snigaroff, Crystal Dushkin, Kathleen McCune, and Rebecca Dunton "published false and defamatory statements to others that the McManuses were unprofessional, confrontational, and caused concerns for the 'safety and emotional well-being of their students.'"[102] As part of their defamation claim, Plaintiffs' reference other allegations in their Amended Complaint that ARSD retaliated against Plaintiffs for making various reports about student and building safety issues, mismanagement of district funds, and denial of IEP rights of a student with disabilities.[103] Plaintiffs describe this retaliation as including, among other things, collaboration by Defendants Joseph Beckford, Crystal Dushkin, and Mary Swetzof "to fabricate a story about the McManuses failing to cooperate with the language classes and other things" and ARSD blacklist[ing] [Plaintiffs] with a letter" which stated false reasons for their non-retention.[104]

Plaintiffs allege virtually no details regarding the contents of the "fabricated story" about how the McManuses' behavior "caused concerns for 'the safety and emotional well-being of their students'" or how the "McManuses fail[ed] to cooperate with the language classes and other things."[105] Additionally, Plaintiffs include no facts about who the "story" was communicated to and in what manner or context, other than through letters of non-retention to Plaintiffs, which are

---

[101] *See id.* at. ¶¶ 25, 27, 62–64.

[102] *Id.* at ¶¶ 20, 25–27, 62.

[103] *Id.* at ¶ 62.

[104] *Id.* at ¶¶ 25–27.

[105] *See id.* at ¶¶ 27, 62.

not public.[106] As Defendants point out, it is not enough for Plaintiffs to allege that Defendants participated in a "retaliatory conspiracy in which each [D]efendant played some amorphous and unspecified part."[107] These allegations fail, on their face, to plausibly state a claim for defamation.

Plaintiffs also reference an inability to speak freely during school board meetings and incorrect statements made by "Mr. Hanley" at an ARSD board meeting, which were "deleted from the minutes to prevent the public at large from learning that he had been misleading the school board in an attempt to prevent the McManuses' free speech."[108] Allegations of limitations on the Plaintiffs' speech at public meetings or deletion of "incorrect statements" from meeting minutes similarly fail, on their face, to state a claim for defamation.

---

[106] *See Skagway City Sch. Bd. v. Davis*, 543 P.2d 218, 224–25 (Alaska 1975) (noting in suit for wrongful discharge that "recovery in this case could not be based on a theory of tort liability . . . . [because] the record d[id] not contain evidence of malice or of any attempt by the school board to defame [the superintendent]" further there appeared "to be no communication by the board to third persons about [the superintendent's] performance" and the "board's criticisms were published only in the course of a closed hearing held at the request of [the superintendent] . . . . [thus] the actions of the board fall within at least a qualified privilege, which immunizes the board from tort liability"), *overruled on other grounds by Diedrich v. City of Ketchikan*, 805 P.2d 362, 366 (Alaska 1991); *see also Redman v. Dept. of Educ.*, 519 P.2d 760, 771 (Alaska 1974) (In a case involving a teacher claiming damages for defamation based on her alleged wrongful discharge, the Alaska Supreme Court held that the teacher's failure to argue certain points caused her to abandon her claim on appeal.).

[107] Dkt. 42 at 4; *see* Fed. R. Civ. P. 8; *see also Estate of Bock ex rel. Bock v. Cty. of Sutter*, No. 2:11–CV–00536–MCE, 2012 WL 423704, at *6 (E.D. Cal. Feb. 8, 2012) (dismissing claims where "Plaintiffs . . . directed most of their allegations at 'Defendants' generally, making it impossible to discern which Defendants were responsible for which actions").

[108] Dkt. 29 at ¶ 44. Plaintiffs may have meant to cite to Paragraph 43, in which Plaintiffs allege that "Superintendent Mike Hanley has engaged in a pattern of deceiving the school board and the public" with regard to the McManuses "as recently as January 13, 2021[.]" *Id.* at ¶ 43. Plaintiffs allege that Hanley stated, "that all state and federal investigations had been resolved in favor of ARSD, when in fact that his not true and AKOSH investigator Melody Russo was forced to counter that . . . her investigation was active" and the Alaska Department of Labor "found in 2018 that ARSD did not have just cause to non-retain the McManuses." *Id.* Mike Hanley is not named as a Defendant in this action, and it is unclear how allegations about whether an investigation was pending or had been resolved amount to defamation.

Second, Plaintiffs allege that during a public meeting in Adak, Alaska in April 2018, Defendant Joseph Beckford wrongly "denied that [Shilo] McManus was the supervisor of the custodians" and "indicated that problems were due [to] the McManuses creating a 'hostile environment.'"[109] Plaintiffs fail to show how a misstatement regarding the scope of Shilo McManus's authority over the school custodial staff is actionable as a defamation claim. Further, Beckford's "indicat[ion]" during a public meeting that Plaintiffs caused unspecified problems and created a hostile environment lacks sufficient detail for Defendants to respond to the allegation.[110] Moreover, the Court is unable to discern from Plaintiffs' allegations which statement was made and to whom, whether Plaintiffs believe the statement to be false, whether the statement was privileged, and whether the statement was made with fault or malice. Accordingly, this allegation fails on its face to plausibly state a defamation claim against Beckford.

Third, Plaintiffs allege that Defendant Mary Swetzof "published false and defamatory remarks [about Plaintiffs] in a three page letter to ARSD dated May 1[,] 2018[.]"[111] Plaintiffs allege that this May 1, 2018 letter included statements that Plaintiffs "made 'inaccurate reports about systems and housing' . . . in reference to protected activities" and characterized the McManuses as "'not responsible, reliable, or truthful adults[.]'"[112] In their additional filings, Plaintiffs attach a letter purportedly from Mary Swetzof, in her capacity as a community member and parent of two children enrolled in Netsvotov School in Atka, to ARSD.[113] In the letter, Swetzof

---

[109] *Id.* at ¶ 63.

[110] *See* Fed. R. Civ. P. 8.

[111] Dkt. 29 at ¶ 64.

[112] *Id.*

[113] Dkt. 39-7 at 1.

describes her concerns and issues with unnamed school teachers, who are described as "a married couple."[114]

Additionally, Plaintiffs allege that Defendant Mary Swetzof, an ARSD board member, "made defamatory statements about the McManuses during a public ARSD school board meeting on January 13, 2021[.]"[115] Specifically, Plaintiffs allege Swetzof "repeated false claims made in her [L]etter to the school that the McManuses were supposed to clean the school and did not."[116]

Considering the contents of this Letter in the context of a Motion to Dismiss, assuming the unnamed teachers referenced in Swetzof's Letter are, in fact, Plaintiffs, and construing all allegations in the Amended Complaint as true,[117] Plaintiffs have failed to plausibly state a claim

---

[114] *Id.* The letter contains numerous statements, including that the teachers made derogatory comments about students and members of the community, failed to provide students with one-on-one attention and instruction, allowed students to use electronic devices during instruction periods, and failed to follow a standard "reading program . . . after the first quarter [of the school year]." *Id.* at 1–2. Swetzof describes how "[b]oth teachers made continuous complaints about the first [school] janitor and made a hostile work environment for the second, to the point he not only left his job, but took his family and left the island," and that the teachers "not only disregarded their duty to upkeep the school, but put it in the worst condition [Swetzof had] ever seen it[.]" *Id.* at 2. Additionally, Swetzof describes the teachers as "not responsible, reliable, or truthful adults" and how the teachers felt they "need[ed] control or some sort of power over" locals, and Swetzof accuses the teachers of making "false reports or irrational attempts to further whatever hidden agenda they may have" including "to shut-down our [Unangax] Language programs[.]" *Id.* at 3. Swetzof states she believes "the teachers are in violation of certain requirements as educators in the State of Alaska, to possibly include Indian education acts, as well as special education" and asks for an "investigation into any possible violations these teachers have committed." *Id.* The Court includes these details to provide description of the attached Letter not to weigh in regarding the merits of Plaintiffs' allegations as supported by the Letter. Plaintiffs do not point to which statements in the Letter they consider to be defamatory.

[115] Dkt. 29 at ¶ 65.

[116] *Id.*

[117] *See Arpin*, 261 F.3d at 923.

for defamation against Defendant Mary Swetzof.[118] The allegations contained in the Amended Complaint lack specificity and are conclusory.[119] Plaintiffs make little attempt to identify which, of the numerous statements made in the letter, meet the legal standard for defamation. Plaintiffs cannot merely gesture to a lengthy letter and expect the Court or Defendants to embark on a fishing expedition and guess which specific statements are allegedly defamatory. Plaintiffs are the masters of their Complaint and are required to set out with enough detail which statements each Defendant made and must allege facts that support for each element of alleged offenses.[120] Further, insofar as Plaintiffs argue their letters of non-retention are defamatory, they must plausibly plead this by providing enough facts to assess the elements of the claim alleged.[121] Plaintiff must also allege Defendants possessed the necessary mental state to survive a motion to dismiss and must make clear in what capacity Defendants are sued. Accordingly, Defendants' Motion to Dismiss Count 4 for failure to state a claim under Rule 12(b)(6) is **GRANTED** and Count 4 is **DISMISSED without prejudice**.

### B. Count 5: Violation of the Alaska Landlord Tenant Act

The Court concludes Plaintiffs have failed to allege a sufficient nexus or relationship between the alleged landlord tenant violations alleged against ARSD in Count 5 and the federal claims in Counts 1 and 2. Consequently, the Court lacks jurisdiction to hear Court 5 of Plaintiffs' Amended Complaint. Even if the Court has jurisdiction, Plaintiffs have failed to state a claim upon

---

[118] *See Green*, 655 P.2d at 739; *MacDonald*, 166 P.3d at 16.

[119] *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action" and "conclusory statements" will not suffice.).

[120] *See* Fed. R. Civ. P. 8.

[121] *See* Dkt. 29 at ¶¶ 26 –27, 62; Dkt. 35 at 3–5.

which relief can be granted. Accordingly, Defendants' Motion to Dismiss Count 5 under Rule 12(b)(1) and (b)(6) is **GRANTED**.

The Uniform Residential Landlord Tenant Act (the "Act") as adopted in Alaska[122] recognizes the contractual nature of the landlord-tenant relationship, grants tenants the right to require a landlord to maintain fit premises and provides a remedy for damages if a landlord fails to do so.[123] "A landlord or tenant may also 'terminate a month to month tenancy by a written notice given to the other at least 30 days before the rental due date specified in the notice.'"[124]

A federal court has supplemental jurisdiction over state law claims only if they arise from the same common nucleus of operative facts as a federal claim properly before the court.[125] Here, Plaintiffs allege that their landlord, ARSD,[126] failed to maintain a fit premises and failed to provide Plaintiffs with adequate notice prior to terminating the lease agreement.[127] These allegations do

---

[122] Alaska Stat. Ann. § 34.03.010–.390.

[123] Alaska Stat. Ann. § 34.03.100 ("The landlord shall . . . make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition[.]"); Alaska Stat. Ann. § 34.03.160 ("[I]f there is a material noncompliance by the landlord with the rental agreement or a noncompliance with AS [§] 34.03.100 materially affecting health and safety, the tenant may deliver a written notice to the landlord specifying the acts and omissions constituting the breach and specifying that the rental agreement will terminate upon a date not less than 20 days after receipt of the notice if the breach is not remedied in 10 days . . . . the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement[.]").

[124] *Helfrich v. Valdez Motel Corp.*, 207 P.3d 552, 557 (Alaska 2009) (quoting Alaska Stat. Ann. § 34.03.290(b)).

[125] 28 U.S.C. § 1367(a); *Gibbs*, 383 U.S. at 725.

[126] The Court agrees with Defendants that Plaintiffs have not alleged that individual Defendants acted as Plaintiffs' landlords or owed Plaintiffs any duties under the Act; the prayer for relief in the First Amended Complaint references only ARSD in relation to Count 5. *See* Dkt. 31-1 at 13; *see also* Dkt. 29 at ¶¶ 67–71.

[127] *See* Dkt. 29 at ¶¶ 67–71.

not arise from the same common nucleus of operative facts as Plaintiffs' federal claims brought under Section 504 of the Rehabilitation Act and under 42 U.S.C. § 1983.[128] In their Oppositions and Surreplies, Plaintiffs do not present arguments or facts showing the habitability of lodging provided by ARSD stems from the same set of operative facts as the federal law claims that Plaintiffs seek to bring before the Court in Counts 1 and 2.[129] Plaintiffs focus only on their eviction without proper notice.[130]

Even liberally construing Plaintiffs' allegations that their eviction without adequate notice was done in retaliation for Plaintiffs engaging in protected activity under Section 504, Plaintiffs' claim still fails. Only certain types of retaliatory conduct by landlords against tenants are actionable under the Act; specifically, retaliatory conduct against tenants who seek to enforce rights or remedies granted under the Act.[131] The state law under which Plaintiffs bring Count 5 offers no remedy for retaliation for speech or activities protected activities under Section 504 or

---

[128] *See id.* at ¶¶ 15–30.

[129] *See* Dkts. 35 at 2, 6; 45 at 1 ("The claims relating to hability[sic] of lodging primarily serve to establish a secondary residence by Plaintiff [Wayne] McManus inside the school building proper, where he was sleeping on the floor because of mold or other issues in district housing.").

[130] Dkts. 35 at 2; 45 at 1–2.

[131] *See* Alaska Stat. Ann. § 34.03.310; *Helfrich*, 207 P.3d at 563 n.19 (Winfree, J., dissenting) ("The statutory remedy afford a victim of illegal retaliation [under Alaska Stat. Ann. § 34.03.310] is limited."); *see also Helfrich*, 207 P.3d at 559 (citing Alaska Stat. Ann. § 34.03.310 and concluding that tenants who threaten personal injury lawsuits are not protected from retaliation under the Landlord Tenant Act); Alaska Stat. Ann. § 34.03.210 (tenant's remedies for landlords unlawful ouster, exclusion, or diminution of service).

42 U.S.C. § 1983. Additionally, it is not clear that Plaintiffs, who were seemingly provided housing as a condition of their employment, may bring a claim under the Act.[132]

Accordingly, Defendants' Motion to Dismiss Count 5 is **GRANTED** and Plaintiffs' state law claim brought under the Alaska Landlord Tenant Act is **DISMISSED**. Insofar as Plaintiffs seek damages under state law for failure to maintain a fit premise, failure to provide adequate notice before terminating Plaintiffs' lease, and retaliatory eviction for complaining about unfit housing standards, such claims are not properly brought in federal court.

## V. CONCLUSION

The Court concludes it has jurisdiction over Plaintiffs' defamation claim but that Plaintiffs' allegations fail to plausibly state a claim for defamation. The Court further concludes that it lacks jurisdiction over Plaintiffs' landlord tenant claim, and even if the Court has jurisdiction over Count 5, Plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, the Motion to Dismiss Counts 4 and 5 at Dockets 31 is **GRANTED in part** and **DENIED in part**. Plaintiffs' landlord tenant claim is **DISMISSED** for lack of jurisdiction and Plaintiffs' defamation claim is **DISMISSED** without prejudice for failure to state a claim.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 17th day of August, 2021.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[132] *See* Alaska Stat. Ann. § 34.03.330. ("[T]he following arrangements are not governed by this chapter: (1) residence at an institution, public or private, if incidental to detention or the provision of medical, geriatric, educational, counseling, religious, or similar services.").

26